# Cox *v.* Schuylkill Valley Traction Company, Appellant.

*Negligence—Street railways—" Stop, look and listen "—Headlight on car— Positive and negative testimony—Evidence.*

Where a street railway company runs an electric car whose lights have gone out, rapidly down a steep grade, with the headlight not lighted, and the car runs over a person crossing the tracks, the question of the company's negligence is for the jury.

Where persons are waiting and watching for an approaching street car, and are looking in the direction from which the car is coming, and the car is directly in their presence, the court will not say that their evidence was negative, when they declare the car had no headlight burning, and was in such complete darkness that it could not be seen at all.

Where a person on a highway approaches the tracks of a street railway on a dark night, with the intention of crossing the tracks so as to board the

car on the side where the seats were open, and he testifies that he stopped, looked and listened before going on the tracks, and that he was struck by a car in crossing, and that he did not see the car because its lights were out, and no headlight was burning, the question of the passenger's contributory negligence is for the jury.

Argued Jan. 30, 1906.   Appeal, No. 320, Jan. T., 1905, by defendant, from judgment of C. P. Montgomery Co., Dec. T., 1904, No. 44, on verdict for plaintiff in case of Martin J. Cox v. The Schuylkill Valley Traction Company.   Before MITCH-ELL, C. J., BROWN, MESTREZAT, POTTER, and STEWART, JJ. Affirmed.

Trespass to recover damages for personal injuries.   Before SWARTZ, P. J.

At the trial the jury returned a verdict for plaintiff for $2,500, subject to question of law reserved.

On motion for judgment non obstante veredicto, SWARTZ, P. J., filed the following opinion :

We reserved the question " whether there is any evidence to be submitted to the jury upon which the plaintiff is entitled to recover."   The plaintiff was injured by a trolley car while he was crossing the tracks.   It became necessary to amputate his leg about three inches above the ankle.   The jury found a verdict for him for $2,500.

The plaintiff intended to board the car as a passenger.   The car had a guard or safety rail next to him so that it was neces-sary to cross the tracks and enter the car from the opposite side.   The tracks of the railway at the place of the accident crossed from one side of the public highway to the other. There was no intersecting highway at this point, but the cars were accustomed to stop there when any persons desired to enter or leave a car.   The point was opposite a hotel and the cars frequently discharged and received passengers at the place of the accident.

The plaintiff charged the company with negligence in oper-ation of the car which injured him.   The statement of the plaintiff alleges that the car was run at an excessive speed and without a headlight.   More than 300 yards east of the place of the accident the car crossed an overhead railroad

bridge and from the bridge to the point of the accident there was a clear unobstructed view. From the bridge the car came down a steep descending grade, but just before the plaintiff was struck the grade changed to a slight ascending one. The car in its passage from the bridge to the point of the accident was in darkness,—that is, the lights in the car went out. This was due to the trolley pole slipping from the wire and also probably to the interruption of the power or electric current for a few seconds. The accident occurred between 9:30 and 9:45 P. M. and the night was very dark.

There was evidence on the part of the plaintiff that the car was behind time and came down the hill at an unusual speed, that it ran very fast, unusually fast. The conductor came to the plaintiff at the time of the accident and while the plaintiff was on the ground where the car had thrown him, and made the remark " that he was late and wanted to make up time."

We eliminated the question of speed from the consideration of the jury, and we also told the jury that if the headlight was burning the plaintiff could not recover. We concluded that the plaintiff was guilty of contributory negligence if he stepped in front of a moving car that was in full view for more than 300 yards before it reached him. This may have been a more favorable view for the defendant company than was warranted by the law and the evidence. It may have been a question for the jury whether the plaintiff was negligent even if the headlight was burning. The night was dark; the plaintiff testified that he stopped, looked and listened before he entered upon the tracks and the car was dark so far as there were any lights in the car: McGovern v. Union Traction Co., 192 Pa. 344. Cars, however, are allowed to run fast, especially in country districts; their office is to conduct passengers rapidly from one point to another. The accident occurred on a public highway about one-half mile below Norristown. Whether we were right or wrong the defendant company had the benefit of our ruling. We presented the case to the jury whether the company was negligent if it was without a headlight and whether the plaintiff was negligent in stepping in front of the car even if it was running without the headlight.

The running of this dark car rapidly down a steep grade with the headlight out, that is, not lighted, was clearly evidence

of negligence for the consideration of the jury. We said to
the jury,—"I call your attention to the other charge of negli-
gence, that this company did not have a proper light as a head-
light upon the car, because, gentlemen of the jury, if there
was nothing about this car to notify a man who stopped, looked
and listened, he might have used proper care and yet have re-
ceived no information that a car was close at hand and there-
fore if he attempted to cross, you might find that it was not
through his negligence, but because the company did not give
him the protection that it ought to have given when running
upon this highway."

It is claimed that there was no sufficient evidence that the
headlight was not lighted to submit that inquiry to the jury.
Let us examine the evidence upon the part of the plaintiff. If
this testimony made out a clear case for the jury by positive evi-
dence it matters not how strong the contradictory evidence of the
defendant may have been. It was then a question for the jury
to determine which side they would believe or which side car-
ried conviction to their minds.

The plaintiff and the witness Krier were on the hotel porch
waiting for an up car. The plaintiff testifies that Krier said:
"Come on, Mart. So I got up and walked out; you could not
see anything along the line, and I stopped; and I stopped there
for quite a little bit, and I walked across and I was about mak-
ing my last step when the car struck me." Krier says when
he called on the plaintiff to come on the trolley was on the hill.
Therefore, when the plaintiff looked the car must have been
within his view, and if he saw nothing along the line the plain-
tiff (if he tells the truth) 'failed to see the car because the car
was without light. He says he did not see the car at all. He
was asked, "Did you look in the direction the car was to
come?" He answered, "Yes, sir. "Q. What did you stop
there for? A. I wanted to see whether there was anything
coming or not. I could not see anything. Q. Why did you
say you stopped? A. I could not see anything, it was all
dark." The question was repeated later on in the examination
and he answered again,—" to see whether I could see anything
coming, I could not see anything coming down."

Mr. Krier testifies: "Q. Did you look in that direction?
A. I looked but I didn't see no car. I did not see it from the

time I seen it on the hill. Q. Did you see any headlight? A. No, I did not. Q. You saw no headlight? A. I saw no light whatever to my knowledge. I looked down and didn't see no car after I seen it on the hill. Q. Why couldn't you see it with a headlight on? A. I could not see a headlight when there was none I don't think. Q. Suppose there was a headlight? A. I could have seen the car. Q. You could have seen the car? - A. Yes, sir." Again he said: " I did look and surely I could have seen a headlight if there was one burning."

Mrs. Matz was a passenger on the car and says there was no headlight burning. She looked for the reflection from the headlight. " Q. You could not see the headlight, of course? A. You could see the reflection if there was any. Q. Did you try this night to see the reflection of the headlight? A. Yes, sir. . . . I had my eyes open. I would have seen the light if it would have been there." As the car within was in total darkness a headlight would have been the more visible if burning. It is claimed that the evidence of the plaintiff's witness is negative testimony and therefore of no weight. I cannot agree to this. Where persons are waiting and watching for a car and are looking in the direction of the approaching car and the car is right in their presence, it will not do to say that their evidence is negative when they declare the car had no headlight burning and was in such complete darkness that it could not be seen at all. There was some evidence of a negative character given by the witnesses seated on the hotel porch. They had no occasion to watch for the car and they were not interested in its movements. One of the witnesses, however, passes a little beyond the negative line. He noticed the car at the lower crossing and observed the speed. He saw no lights on the car. On cross-examination he said he saw the car on the lower crossing,—that is, before it reached the point where the accident occurred. " Q. How came you to see it there if no light was lighted? A. I was looking that way. I was looking right toward the trolley track. Q. Then you could see it without lights? A. Yes, from the light from the hotel—the reflection. Q. Without any lights on the trolley at all you could see it? A. Yes, sir." If he watched the car if only by reason of the reflected light from the hotel it would seem to follow that there

was no headlight on the car.   An approaching car without any lights in the car and on a dark night will surely disclose its presence by the burning headlight.   The headlight will be the more brilliant in appearance because of the surrounding darkness.

We were careful to call the attention of the jury to the difference between negative and positive evidence.   Where witnesses are interested in an approaching train and give attention to it by watching for it or listening for it, and then state the certain signals alleged to have been given were not heard by them, their evidence is not, under such circumstances, merely negative: Quigley v. Canal Co., 142 Pa. 388.   So we may say that the witnesses Cox and Krier were interested in the arrival of the car and their attention would be attracted by any signal, or approaching headlight.   Common experience teaches that such person will observe warnings when others with no object in awaiting the car might not hear or notice the signals or the approaching headlight: Daubert v. R. R. Co., 199 Pa. 345.

Under the disputed evidence we do not see how the court could have instructed the jury to render a verdict for the defendant.   We may think that the evidence in support of a lighted headlight is stronger than the opposing testimony, but this belief will not justify us in entering judgment for the defendant on the question reserved and no other motion is pending before us on the record.

And now, October 16, 1905, the motion for judgment in favor of the defendant on the question reserved is overruled and it is ordered that judgment be entered for the plaintiff on the verdict upon the payment of the jury fee.

*Error assigned* was the judgment of the court.

*N. H. Larzelere,* for appellant, cited as to contributory negligence: McCartney v. Union Traction Co., 27 Pa. Superior Ct. 222; Sullivan v. Consolidated Traction Co., 198 Pa. 187; Watkins v. Union Traction Co., 194 Pa. 564; Blaney v. Traction Co., 184 Pa. 524; Boring v. Union Traction Co., 211 Pa. 594; Pieper v. Traction Co., 202 Pa. 100.

Cited as to defendant's lack of negligence: Keiser v. Lehigh Valley R. R. Co., 212 Pa. 409; Graham v. Penna. Co., 139 Pa.

149 ; Siegler v. Mellinger, 203 Pa. 256 ; Knox v. Ry. Co., 202 Pa. 504; Lonzer v. Lehigh Valley R. R. Co.; 196 Pa. 610.

*Henry I. Fox,* for appellee, cited : Daubert v. R. R. Co., 199 Pa. 345 ; Quigley v. Canal Co., 142 Pa. 388; Jones v. R. R. Co., 202 Pa. 81 ; Todd v. Ry. Co., 201 Pa. 558; Hamilton v. Traction Co., 201 Pa. 351 ; Jones Bros. v. Ry. Co., 9 Pa. Superior Ct. 65 ; Fisher v. Ry. Co., 131 Pa. 292 ; McGovern v. Union Traction Co., 192 Pa. 344 ; Howett v. R. R. Co., 166 Pa. 607.

PER CURIAM, February 26, 1906 :
The judgment is affirmed on the opinion of the court below.