PIONEER S. S. CO. v. JENKINS.

(Circuit Court of Appeals, Sixth Circuit. July 11, 1911.)

No. 2,113.

1. SHIPPING (§ 86*)—PERSONAL INJURIES—QUESTIONS FOR JURY.

In an action by a trim operator in employ of a coal company against a steamship company for personal injuries sustained by falling into an open hatch while loading the vessel, *held*, that the court properly submitted to the jury the question of the right of the plaintiff to be on the vessel as established by custom and the defendant's knowledge of such custom.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 353–360; Dec. Dig. § 86.*]

2. APPEAL AND ERROR (§ 724*)—ASSIGNMENTS—GROUND OF OBJECTION.

Where the ground of the objection on which an assignment was based was not stated, the assignment cannot be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2997; Dec. Dig. § 724.*]

3. SHIPPING (§ 86*)—PERSONAL INJURIES—EVIDENCE.

In an action against a steamship company for personal injuries received by plaintiff, while assisting to load a vessel, in falling into an open hatch, a question was asked as to a custom of the trim operator, such as plaintiff, going down on the deck of the boat to look after his machinery, and the answer was that it was a general custom for him to do so, and that "when he was starting a boat was practically the only time he had to look after the machinery, while it was high up out of the water, and that he did this by going down on the deck of the boat, taking advantage of that time because they would roll from 10 to 12 cars in such

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

large vessels before they shifted when they started." *Held* the answer was not immaterial nor subject to the objection that it related merely to an individual habit, and that its object was to create a right of plaintiff to be on the deck of the vessel and a correlative duty of defendant.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 353–360; Dec. Dig. § 86.*]

**4. EVIDENCE (§ 147*)—ADMISSIBILITY—NEGATIVE TESTIMONY.**

In an action by one injured by falling into the hatch of a vessel, testimony by witness in answer to an inquiry as to the condition of the hold with "reference to being dark or otherwise," that it was pitch dark, that you could see nothing at all, and that there were no lights down in the hold, but that afterwards when he came back he saw lights, was not merely negative.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 435–437; Dec. Dig. § 147.*]

**5. SHIPPING (§ 86*)—PERSONAL INJURIES—NEGLIGENCE—QUESTION FOR JURY.**

In an action against a steamship company for personal injuries from falling into an open hatch while engaged in loading the vessel, *held* that, under the evidence and circumstances, it was not error to refuse to hold as a matter of law that "an open hatchway on a ship provided with the usual coamings is not evidence of negligence," but that such question was properly submitted to the jury.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 353–360; Dec. Dig. § 86.*]

**6. SHIPPING (§ 86*)—PERSONAL INJURIES—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.**

In an action against a steamship company by a trim operator for injuries sustained by falling in an open hatch in loading the vessel, *held*, that the question of plaintiff's contributory negligence was for the jury.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 353–360; Dec. Dig. § 86.*]

In Error to the Circuit Court of the United States for the Northern District of Ohio.

Action by David L. Jenkins against the Pioneer Steamship Company. Judgment for plaintiff, and defendant brings error. Affirmed.

S. H. Holding (Goulder, Day, White & Garry and Holding, Masten, Duncan & Leckie, on the brief), for plaintiff in error.

R. B. Newcomb (Skiles, Green & Skiles and A. G. Newcomb, on the brief), for defendant in error.

Before SEVERENS and KNAPPEN, Circuit Judges, and SANFORD, District Judge.

KNAPPEN, Circuit Judge. The defendant in error, who was plaintiff below, sued plaintiff in error, as defendant, on account of injuries received by the plaintiff in falling through an open hatchway and into the hold of the steamship D. R. Hanna, owned by the defendant, and controlled and managed by agents doing business at Cleveland. Shortly before the accident the steamer had been made fast to the dock of the Pittsburgh Coal Company, at Cleveland, for the purpose of being there loaded by the Coal Company with a cargo of coal. The loading was being done by a machine belonging to the Coal Company and located upon its dock, by means of which machine cars of coal were dumped into a chute and carried therethrough into the hold of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the vessel. Plaintiff was trim operator, in the employ of the Coal Company, upon the loading machine, his station being upon a platform several feet above the deck and amidships; from which station the trimming was directed by means of machinery there worked by the operator in connection with a telescope communicating with the chute and extending through the hatchway. The Hanna was a large vessel, having 32 hatches, each 10 feet wide and 48 feet long, being 12 feet from center to center, with coaming about 8 inches high. The distance between two hatches with chains on was 2 feet. Each hatch cover was composed of 10 telescoping plates, 5 on each side, worked by machinery from the center toward the ends of the hatch. When the hatch was entirely open, a passageway of about 3 feet was left between the cover plates and the side of the ship. But 28 of the Hanna's hatches could be loaded without removing the boat from the slip and ending her about. Accordingly hatches 1 to 28, both inclusive (counting from the bow), were entirely open for the purpose of loading. Hatch No. 29 was open at the center for some distance, the extent being in conflict. After loading had been in progress for a few minutes, the telescope being in No. 28 hatch, where the loading began, plaintiff in coming from the side of the boat opposite the dock back to the machine, for the purpose of resuming his station upon the platform, fell through the opening in the cover of hatch 29. There was trial by jury, and verdict and judgment for plaintiff. The errors assigned relate to the questions of (1) plaintiff's right to be upon the vessel at the time of the accident; (2) defendant's alleged negligence; and (3) plaintiff's alleged contributory negligence.

*1. Plaintiff's right to be upon the deck.*

The petition alleges that during the work of loading it became necessary and proper for plaintiff to go aboard the boat (a) "in pursuance of the request and invitation of" the captain of the boat; (b) "in pursuance of (plaintiff's) duties in safely carrying on said work of coal loading"; and (c) "in order that the work of loading said boat could be properly, safely and expeditiously carried on to the benefit of both the Pittsburgh Coal Company and said defendant."

There was testimony tending to show that it was the duty of the trim operator, as the loading of the vessel was about to begin (or perhaps just after it started), and after the telescope had been inserted in the hatch, while the boat was still high out of the water, to descend to the deck, oil the sheaves and look after the cables and trimming machinery and see that they are in good condition; that this is practically the only time the trim operator has to perform this duty; that it was the general custom at the Pittsburgh Coal Company's dock for the trim operator to take this course; that plaintiff always did so, and that he had in that capacity trimmed the Hanna at least four times at the dock in question during the then present season and once during the previous season. The greater part of this testimony was received without objection. Plaintiff also testified that just before the loading began the master of the boat, on leaving, asked plaintiff to "keep an eye" on the mate, and that if anything should go wrong or it should be necessary to "wind" the boat around, he call the master by tele-

phone. Plaintiff further testified that immediately after the work of loading was begun the conditions proved such as to make it necessary for him to go to the deck and examine his cables; that he did so; that he found the water was being pumped too rapidly out of the boat, causing her to get "real high," and he accordingly walked over to the further side of the boat to ask the mate "to stop pumping the water, as if she got up too high we could only get a couple of cars at a time in without shifting," that the mate sent orders to the engineer accordingly; that plaintiff started back to look at the cable on the other side of the machine and to go aboard the "rigging," in doing which he walked across hatch 29 and into the opening. No motion for directed verdict was made at the close of the testimony. Defendant requested no instruction touching plaintiff's right to be upon the deck at the time of the accident.

The jury were instructed that:

"If the plaintiff had any duty which from time to time called him to the deck, whether that duty related to the care of the machine which he was operating or a conference with any of the officers of the boat, or if, in the customary way of operating the trim machine, it was the habit of the trim operator to pass from time to time upon the boat, and the defendant knew that that was the habit of the trim operator, then the duty rested upon the defendant to use ordinary care for the safety of any such person, who thus had the right, or was known to the defendant to be in the habit of passing upon the deck of the vessel"—

[the instruction regarding the custom of going aboard the boat being later in the charge limited to "a custom of going aboard to perform some work related to the matter of loading the boat or related to the matter of the loading machine," with the express instruction that, in order that such custom be effective, it must be found that the defendant knew that plaintiff had such custom, "or that the loader or the trimmer had the custom to go aboard the boat for the purpose of performing work in relation to the loading"; that the instruction was not "intended to apply to a mere custom except that which has a foundation upon the performance of some work by the trim operator in connection with the loading of coal"; and that unless the plaintiff was "rightfully" on the deck, "either by reason of some work or some known custom which he (defendant) recognized and knew of," the plaintiff could have no right to recover]. The idea of a duty owing by defendant to plaintiff as a mere volunteer was thus excluded.

[1] The only exceptions taken by defendant to the charge of the court on this branch of the case were, first, "to the submission to the jury of the right of the plaintiff to be upon the vessel as established by custom, and as to whether the defendant knew of such a custom, there being no evidence that the defendant knew of any such custom"; and, second, to the part of the charge contained above in brackets, to which counsel announced "the same exception, in that there is no evidence that the defendant had any knowledge." The evidence above stated, in our opinion, tended to show defendant's knowledge of the alleged custom. Under these two exceptions defendant assigns error upon several extracts from the charge. It is perhaps enough to say that such assignments are not based upon proper exceptions. But

assuming that they were, we think the criticisms presented are not well taken.

[2] The only remaining assignments, so far as argued, relating to this branch of the case are directed to the admission of certain testimony as to the custom in question. As to one of these assignments (the fourth) it is enough to say that the ground of the objection on which the exceptions and assignments are based was not stated. This assignment can therefore not be considered. Burton v. Driggs, 20 Wall. 125, 133, 22 L. Ed. 299; Erie R. R. Co. v. Schomer, 171 Fed. 798, 805, 96 C. C. A. 458.

The objection on which the first assignment is based was that the defendant was not apprised of the custom. This objection was not good. The question of knowledge was for the jury.

[3] The remaining assignment is based upon an objection of immateriality to a question as to the custom at the dock at the time of the accident and prior thereto, "with reference to working on the 'D. R. Hanna' and other boats of that type, with reference to the trim operator, such as Jenkins was, going down on the deck of the boat to look after his machinery, and, if so, when did he do it?" Defendant disclaimed exception to the form of the question. The answer was:

"It is a general custom and rule for the trimmer, and when he is starting a boat is practically the only time he gets to look after his machinery, on the boat, when the boat is high up out of the water, and he gets a very good chance to look at his sheaves and cables and at the machinery underneath which he cannot do at any other time. Q. How does he do that? A. He generally goes down on the deck of the boat. He takes advantage of that time, you see, because they roll from 10 to 12 cars in those large vessels before they shift when they start."

This testimony is criticised as relating merely to an individual habit, and that its object was to "create a right of plaintiff to be on the deck of the vessel and a correlative duty of defendant to have regard for such right." We do not so consider the testimony, and do not think it open to the objection of immateriality.

### 2. *Defendant's alleged neglect of duty.*

Defendant's negligence is alleged in plaintiff's petition to consist, first, "in having and permitting to exist said open hatchway immediately next to and adjacent to said coal loading machine, without having said open hatchway protected or guarded in any manner whatsoever"; and, second, in failing to warn the plaintiff in any way "of the existence of said open hatchway either by verbal notice or by the presence of lights or otherwise." There was evidence tending to show that when a vessel of the size and type of the Hanna was at a dock of the size of that here in question, there was a general custom, at the time and place in question, to open only the hatches that were immediately to be worked or filled; that the hatches which could not be worked or filled, as the vessel was then located, if open at all should be wide open; and that open hatches should be lighted by lights in the hold, if electrically lighted, otherwise by lights on deck. The object of such precautions would manifestly be to prevent one being misled by the fact of a partly open or unlighted hatch in stepping upon

it to his possible injury. Such custom would surely be a reasonable one. The testimony as to its existence was in conflict. The testimony on the part of the plaintiff tended to show that hatch 29 was open for only 4 to 6 feet of its length, thus leaving upwards of 42 feet, or seven-eighths of the hatch closed; also that this opening was not sufficiently lighted, either by lights upon the deck of the vessel or on the dock or in the hold, to enable one to discover this comparatively small opening. The reasonable inference from this testimony on the part of the plaintiff is that there was nothing in the appearance of hatch 29 to indicate to one walking thereon that it was partially open, but that one stepping upon the hatch and seeing it for the most part covered and unlighted would naturally infer, in view of the custom stated, that it was entirely covered and safe to walk upon. Plaintiff testified that as he started to go across hatch 29 a member of the crew was standing thereon. There was also testimony that after plaintiff fell through the hatch, the operator on the coal tipple, who was attracted by plaintiff's cries, himself fell into the same opening, and that two others barely escaped the same mishap. On the other hand, the testimony of the defendant tended to show that the custom referred to did not exist; that the hatch in question was kept open according to general custom for purposes of ventilation, as well as to afford a view of the cargo, hold floor and water compartment; that the hatch was open for one-half to two-thirds of its length and easily seen by means of lights upon both dock and deck, as well as lights burning in the hold. The defendant requested no instructions regarding the alleged custom of keeping unused hatches closed or lighted during the process of loading. It presented, however, request No. 1, as follows:

"Plaintiff cannot recover in this action unless defendant were guilty of some breach of duty which it owed plaintiff. It did not owe plaintiff any duty to keep covered 29 hatch nor to wholly uncover it. An open hatchway on a ship, when provided with the usual coamings, is not evidence of negligence on the part of the shipowner."

This request was denied. The court, after stating plaintiff's contentions as to the existence of the custom respecting the closing of unused hatches in the process of loading, and their opening to the full extent when open at all, said:

"If there was no custom at all of either of these sorts, then plaintiff is not entitled to recover here, because he predicates his claim upon the proposition that there was a custom which gave rise to a duty with respect to the method of dealing with these hatch covers, and that the defendant did not perform that duty which it owed to him. So that, if you find there was not any such custom, then the plaintiff is not entitled to recover in this case, for you would not have an establishment by a preponderance of the proof of the defendant's negligence."

Immediately following the paragraph just quoted the court said:

"It is contended by the plaintiff that there were insufficient lights about these hatchways, and, on the other hand, it is contended by defendant that the lights were ample. Upon that the proof is in conflict. It is for you to say, under all of the testimony that has been presented to you, what, in your good judgment, the truth is. What were the lights that were there? Were they such as under all the circumstances and surroundings,

as they have been presented to you in the proof, a reasonably prudent man would ordinarily put in such a situation, having regard to the safety of persons like the plaintiff who might have a right to be there, if you find that he had such a right? If the provisions by way of light and so on were such as a person of ordinary prudence would customarily furnish under such circumstances, then there would not be any negligence because the legal duty resting upon the defendant there would have been performed."

Exception is taken and error assigned upon the giving of the first paragraph of the charge above set out. Exception was also taken "to the submission to the jury as to whether the lights were sufficient lights." The principal argument in support of the exception to the first paragraph of the charge quoted is that the existence of the alleged custom is denied by a number of witnesses better qualified by experience and observation than were those testifying to the existence of the custom; and that in these circumstances it was error to submit to the jury the question whether the claimed custom was established; in other words, that the proof so clearly preponderated against the existence of the alleged custom that it would be the duty of the court to set aside a verdict based upon such custom. A number of authorities are cited in support of that proposition. Passing the fact that no motion or request for direction of verdict was made, we are unable to say that the testimony of the nonexistence of the alleged custom is given by witnesses of qualification and experience superior to that possessed by those who testified to the existence of the alleged custom, nor that the evidence of the nonexistence of the custom in any way preponderated over the evidence in favor of its existence.

The submission of the question whether there were sufficient lights to disclose the opening in the hatch is criticised upon the proposition that the Hanna carried the usual lights upon vessels of her type. But while there was no testimony that provision for such lights upon this vessel was not made, there was testimony from which the jury might properly infer that neither the dock lights nor the deck lights sufficiently disclosed the hatch opening, and that the lights in the vessel's hold were not such as sufficiently to light the opening, whether from the failure of the light below the hatch in question to be in commission or from other causes. Not only was there testimony that the four people, two of whom fell through the hatch opening and the other two of whom barely escaped that experience, saw no light therein, but such experience had some tendency to show the absence of sufficient light.

[4] It is urged, however, that the testimony of the absence of light is negative, and so, under the well-known rule, cannot be allowed to prevail against positive testimony of those having means of information and personal knowledge. The testimony of the operator of the tipple, in answer to an inquiry as to the condition of the hold with "reference to being dark or otherwise" testified "It was pitch dark; you couldn't see nothing at all. * * * You could not see the opening at all;" and in answer to the question, "Were there any lights down in the hold of the boat?" answered "None that I seen at all then," adding that, "After I come back from supper, after supper

hour, it was lit up then;" and in answer to the question "The time you fell in, there was no light in the hold?" said, "There was no lights there at that present time." The testimony, therefore, as to the insufficient lighting of the hatch opening was not merely negative. See Baltimore & O. R. Co. v. O'Neill (C. C. A.) 186 Fed. 13, recently decided by this court.

The refusal to give defendant's request No. 1 is alleged as error, especially upon two propositions, first, that the plaintiff had no implied invitation to go upon the deck of the vessel; and secondly, that an open hatchway on a ship, when provided with the usual coamings, is not evidence of neglect of duty on the part of the shipowner. In support of the first of these grounds counsel cite The Rochambeau (D. C.) 176 Fed. 826, and the decision of this court in Cyborowski v. Transit Co., 179 Fed. 440, 445, 102 C. C. A. 586. We think this ground is not well assigned, in view of the evidence which we have set out. See Pioneer S. S. Co. v. McCann, 170 Fed. 873, 96 C. C. A. 49, where the question of invitation is discussed and pertinent authorities cited.

In support of the second ground counsel cite, among other cases, Horne v. Hammond Co., 71 Fed. 314, 316, 18 C. C. A. 54. In the latter case it was held that:

"An open hatchway on a ship, provided with the usual coamings, is not *ordinarily* evidence of negligence on the part of the shipowner as regards one employed in loading a vessel." (Italics ours.)

What is said in that case must be considered with reference to its peculiar facts. That the case is distinguishable from the one we are considering appears by the following extract from the opinion:

"The necessities and usages of commerce, and the uniform testimony by the admiralty courts to the existence of this rule, alike when it is in issue and when it is not, so support it, not only with reference to the main deck, but also with reference to between-decks, that it cannot be gainsaid. Of course, like all rules disposing of issues of mixed law and fact, the courts are not permitted to follow it implicitly except in what may be classed as ordinary cases. That the case at bar is of that character is plain, unless it be for the fact that the person who left the hatchway open did not leave any light in its neighborhood. The cases are at variance as to the effect of a circumstance of this character. The Gladiolus (C. C.) 22 Fed. 454, 456; The Victoria (C. C.) 13 Fed. 43, 44; The Argonaut (D. C.) 61 Fed. 517, 518. We are, however, relieved from determining whether this fact makes the circumstances of the case extraordinary, because, when the defendant's employés came up through the hatchway, they found the stevedores about it with lamps and candles, as already stated; and there is no evidence from which the jury could find that it was not lighted as well as customary or practicable, or whether the deceased fell by reason of the want of light or through his own haste and inattention."

[5] It is clear to our minds that the court did not err in refusing the requested instruction, first, because we think the jury would naturally and properly have understood that the defendant would not be liable from the mere fact that No. 29 hatch was open, provided notice of the same was sufficiently indicated by lights; and second, because the requested instruction ignored both the alleged custom regarding the

closing and lighting of unused hatches during the process of loading, and the testimony of insufficient lighting. In view of this testimony, we think defendant was not entitled to an instruction that, as matter of law, it owed plaintiff no duty to "keep covered 29 hatch nor to wholly uncover it"; nor, as matter of law, that an open hatchway, under the testimony presented as to custom and insufficient lighting, furnished no evidence of negligence. See, in this connection, Burrell v. Fleming, 109 Fed. 489, 47 C. C. A. 598; West India & P. S. S. Co., Ltd., v. Weibel, 113 Fed. 169, 51 C. C. A. 116. The question whose admission is made the subject of an assignment relating to this branch of the case is not supported by statement of ground of objection, and so cannot be considered.

### 3. *Plaintiff's alleged contributory negligence.*

Defendant presented the following requests:

"(2) If you find that hatch No. 29 was so lighted that its condition could have been observed by plaintiff before he walked into it, as claimed by him, he cannot recover in this action, and your verdict will be for defendant.

"(3) It is in evidence that plaintiff had been engaged upon the Pittsburgh coal dock for several years previous to the accident, and he must be presumed to have possessed on the night of the accident knowledge in regard to the position of the hatches of the D. R. Hanna. And if you find that he proceeded across hatch No. 29 when it was so dark that he could not see whether the hatch was open or closed, then he ought not to have proceeded across the hatch without a light, and having so proceeded he was guilty of contributory negligence and cannot recover in this action."

These requests were refused, and errors assigned thereon. The jury were instructed as follows:

"But even though you should find that the plaintiff had a right to be on this deck; even though you should find that, as respects the plaintiff having a right to be on this deck (as I am assuming you will have found, on this theory), there was a failure on the part of the defendant to properly deal with the subject of opening that hatchway; and even though you found that it did not furnish sufficient light to justify the conclusion that it had performed its duty, as I have defined its duty, still the plaintiff would not be entitled to recover in this case unless, in respect to the matter of falling through this hatchway, he himself was at that time in the exercise of ordinary care for his own safety; for one has no right to recover who himself contributes to the injury which he receives by his own failure to exercise proper care, which is ordinary care for his own safety. If, in passing along from the northwest corner of No. 29—if that is the corner at which he was standing just before the accident—he, in passing on top of the hatch cover of No. 29, going over towards his machine, was not exercising reasonable care for his own safety, and, in consequence of that failure on his part to exercise ordinary care for his own safety, fell into this open hatchway and was hurt, he has no right to recover."

Plaintiff in reply to the question what there was to prevent his walking between 29 hatch and 28 hatch had testified:

"I thought it was the safest way to walk across 29 hatch, for the simple reason it was dark on that side of the machine—there was no light there —and it was made dark by the pan and the telescope being down, and I did not want to walk along in between there because the space is narrow and there is chains in there, and also clamps that they clamp on the

hatches and a fellow might tumble and go down in the hold, so I walked across 29 hatch."

It is clear that the second request presents too strict a rule of diligence on plaintiff's part, in that it eliminates the consideration of due care, and makes the plaintiff negligent in case he could by any means have discovered the fact that the hatch was open.

[6] In view of the charge of the court as actually given, and in view of the testimony of the plaintiff just quoted, as well as the other testimony in the case to which we have before referred, including the evidence of the alleged custom and the fact that a member of the crew was standing upon hatch 29 at or about the time plaintiff started to cross the same, we think the trial court would not have been justified in holding, as matter of law, that plaintiff was guilty of contributory negligence in proceeding to cross the hatch when it was so dark that he could not see whether it was opened or closed.

We have carefully considered all the assignments properly raised and so far as argued, and are of opinion that no error is shown.

The judgment of the Circuit Court must accordingly be affirmed.