Argued March 16; affirmed April 18, 1933

# LOVETT *v.* GILL ET AL.

(20 P. (2d) 1070)

*Lawrence Lister,* of Portland (E. L. McDougal, of Portland, on the brief), for appellants.

*C. W. Kirk* and *E. M. Morton,* both of Portland (Joseph E. Hedges, of Oregon City, on the brief), for respondent.

ROSSMAN, J. November 13, 1930, at 5:30 p. m., the plaintiff was driving her automobile north along the Pacific highway at a point about one-half mile north of Oregon City, with the intention of turning to the left from the highway into McKillican street which enters the highway at that point from the southwest. After the front wheels of her car had crossed over the westerly edge of the pavement, the defendants' truck, which was proceeding south, struck her car a severe blow, swinging it completely around and inflicting upon the plaintiff the injuries for which she seeks redress in damages.

The paved roadway of the highway at this point is 18 feet wide and pursues a direction approximately north and south. A high embankment adjoins the highway on the west. As one drives north he is proceeding up a slight grade and finds that the roadway is turning constantly to the left so that he can see ahead along the course of the road for not more than 250 to 300 feet. McKillican street, as we have said, enters the highway from the southwest but does not cross it. It inclines so much to the south that its convergence with the highway makes a very sharp angle. One who approaches this intersection from the south and turns into McKillican street is compelled to make what the witnesses described as a hairpin turn. Moreover, as he enters McKillican street he is at once confronted with a very steep grade and finds it desirable to shift in second gear. The highway is well paved but McKillican street has a graveled surface.

The plaintiff testified that as she approached this intersection she was proceeding at a rate of 15 to 20 miles per hour, looking straight ahead, and that, since she intended to turn to the left into McKillican street,

she extended her hand to the left in advance of her approach, holding it extended for "probably a few seconds" so as to give notice of her intention to make the turn. She testified that while she was giving the signal she reduced her speed to about six miles per hour, then shifted into second gear and turned to the left after having gone beyond the center of the intersection. After she had completed the turn and her front wheels had left the pavement, her car was struck by the defendants' truck. Defendant Virgil Gill, driver of the truck, described in the following language the position of the plaintiff's car when the impact occurred: "Q. Where was Miss Lovett's rear end with reference to the west edge of the pavement on the Pacific highway at the time you hit her? A. It was about the edge of the pavement, maybe just a little bit over". He testified that he approached the intersection at a speed of 25 to 30 miles per hour which, however, he claimed he had reduced to 15 to 20 miles per hour at the moment when the collision occurred. In another part of his testimony he estimated his approach at 30 to 35 miles per hour. According to the plaintiff, the atmospheric conditions at 5:30 p. m. on November 13 were "cloudy and dark". Another witness described them thus: "The atmosphere was rather thick; a typical November night that had been raining". And still another, as "very dark—not dead dark". All witnesses agreed that it had rained upon that day, leaving the pavement wet and slippery. All likewise agreed that the headlights of the plaintiff's car were illuminated. Plaintiff testified that her lights were capable of revealing an object 300 feet ahead. She swore that as she approached the intersection she looked ahead, saw nothing, and, having turned her

steering wheel to the left, diverted her attention in that direction. At that moment, without having been observed by the plaintiff, the truck crashed into her car.

The complaint charges the defendants with: (1) Operating the truck at an unreasonable rate of speed; (2) failing to have the truck under the control of the driver; (3) failing to maintain a lookout ahead; and (4) failing to illuminate the headlights of the truck. These charges having been denied by the answer, the defendants aver that the plaintiff was guilty of negligence in the following particulars: (1) Operating her car at a dangerous rate of speed; (2) turning to the left without giving a signal; (3) failing to maintain a lookout ahead; (4) failing to yield the right of way to the truck; (5) failing to give a warning signal by sounding her horn; (6) failing to have control over her car; and (7) failing to go beyond the center of the intersection before turning to the left.

The findings of fact entered by the circuit court found (1) that the defendants operated their truck at an imprudent rate of speed; (2) that the driver lacked control over the truck; (3) that he failed to maintain a lookout ahead; and (4) that the headlights of the truck were not illuminated. The findings mentioned each of the specific charges of negligence alleged in the answer and held that it was not supported by proof.

It will be observed that the assignments of error present only issues of fact. This being a law action, the findings cannot be disturbed if supported by competent, substantial evidence: *General Pertoleum Corp. v. Shefter,* 141 Or. 349 (16 P. 645). We have read the transcript of evidence with care. The defendants concede that the plaintiff testified that she saw no

lights on the truck, but argue that all of the remaining findings are without any evidentiary support. Even if we should conclude that all of the findings except the one concerning the headlights are without support, the defendants would not be entitled to judgment because even a single failure upon their part to perform a duty owing to the plaintiff, which proximately caused the injuries for which she seeks redress in damages, could support the judgment granted to her by the circuit court. The defendants argue that the finding that the headlights of the truck were not illuminated is based upon negative testimony only, and that positive testimony overcame it. The plaintiff testified that as she approached McKillican street she looked ahead and saw nothing. Her headlights were shining brightly and were capable of revealing objects 300 feet ahead. A driver who undertakes to cut across traffic owes a duty to look ahead and assure himself that the act can be conducted in safety: *Martin v. Cazedessus,* 15 La. App. 100 (130 So. 129) ; *Koenig v. Semrau,* 197 Ill. App. 624; *Bakkum v. Holder,* 135 Or. 387 (295 P. 1115) ; *Cox v. Jones,* 138 Or. 327 (5 P. (2d) 102) ; *Marsh v. Ayres,* 80 Mont. 401 (260 P. 702). Based upon that rule and our holding in *Morser v. Southern Pacific Co.,* 124 Or. 384 (262 P. 252), wherein we refused to yield credit to a witness-plaintiff who declared that he had not observed an object that was plainly visible to him if he had looked, the defendants argue that the plaintiff must have seen their truck even though its headlights were not illuminated. The following facts should be considered, we believe, in determining whether her failure to see the truck was due to negligence: (1) The pavement was wet, and it is a matter of common knowledge that even bright lights lose part of their effectiveness on a wet pavement. (2) The defendants'

truck was of a dull color which Virgil Gill found impossible to describe. Whatever it may have been, the color rendered it so difficult for others to discern the presence of the truck upon the highway that Phillip Hammond, an attorney of Oregon City who was driving to that city and arrived at the scene of the accident a few moments after the collision had taken place, related the following experience: "You see I came down the hill or grade. I didn't see the truck and I was almost on it before I observed it, and I slammed on my brakes and turned to the left and was going fairly slow". The truck was then standing with its two left wheels upon the pavement. Mr. Hammond's lights were burning brightly. (3) The course of the roadway bends to the left around an embankment as one reaches the McKillican street intersection. The view ahead is thereby restricted to 250 or 300 feet. (4) The character of the intersection required her to perform a difficult feat of driving in order to successfully negotiate the turn. Not only the traffic regulations then in force but also the nature of the intersection required her to go beyond the intersection before turning to the left. Having done so she was compelled to turn sharply to the left so as to make the hairpin turn. One who turns in this manner—and the plaintiff swore that she did—is virtually driving away from cars approaching from the south and would find it difficult to maintain a constant lookout to the north. A car coming around the curve from the north at a high rate of speed would be visible for only an instant before it would reach the car turning into McKillican street. The plaintiff's car had virtually left the highway when it was struck. (5) The plaintiff was not required, in the absence of notice to the contrary, to assume that other drivers would violate our traffic

regulations by failing to illuminate their headlights. We do not believe that the circuit court erred when it declined to subscribe to the defendants' proposed findings holding the plaintiff guilty of negligence for having failed to observe the truck.

■■ The value of negative testimony, like that of all other testimony, is dependent upon the opportunities which the witness possessed for making observations. The testimony of a witness who gave negative testimony because he did not observe or was inattentive would amount to nothing. But if he was in a position where he could observe, and made diligent exercise of his faculties, his testimony that the alleged event did not occur is not negative but is, in fact, positive. Its value is dependent upon his credibility and a comparison of his opportunities for making observations with that of the other witnesses. Wigmore on Evidence (2d Ed.) § 664. In each of the following cases so-called negative testimony established the absence of lights: *Cox v. Schuylkill Valley Traction Co.*, 214 Pa. 223 (63 Atl. 599); *Pioneer S. S. Co. v. Jenkins*, 111 C. C. A. 44 (189 Fed. 312). The plaintiff testified that as she drove along the highway she was constantly looking ahead until she intermittently diverted her attention to the left as she began to turn. Mr. Hammond and another witness who arrived at the scene of the collision shortly after the impact swore that there were no lights upon the truck which was then standing still. Virgil Gill testified that he had not changed the lights after the collision. The two occupants of a car which was following the plaintiff at a distance of approximately 50 feet had not observed the approach of the truck until the collision had occurred. We know of no reason why this testimony

should be disregarded, and conclude that the findings of the circuit court that she had maintained a reasonable lookout ahead, and that the truck was not illuminated, are supported by substantial evidence.

■ We deem it unnecessary to review the testimony further. The circuit court's findings are supported by competent evidence. The issues of fact are tried in that court and not here.

■ The plaintiff moves for the award to her of the 10 per cent penalty which section 7-514, Oregon Code 1930, authorizes this court to impose when the appeal was not justified by probable cause. We decline to impose the penalty.

It follows from the preceding that the judgment of the circuit court is affirmed.

RAND, C. J., BELT and KELLY, JJ., concur.