[No. 30153.   Department One.   July 10, 1947.]

WILLIAM D. POLLARD, *Respondent,* v. PHILLIP R. WITTMAN, *Appellant.*[1]

[1]Reported in 183 P. (2d) 175.

*Eggerman, Rosling & Williams* (*Robert G. Moch,* of counsel), for appellant.

*Wettrick, Flood & O'Brien,* for respondent.

MILLARD, J.—Plaintiff brought this action to recover against defendant for property damage and personal injury sustained as the result of a collision in Seattle between a motorcycle operated by the former and an automobile operated by the latter, whose negligence is admitted. In bar of the action, defendant alleged six acts of contributory negligence by plaintiff, one of which was failure to keep on motorcycle a sufficiently lighted head lamp required by statute. At the close of the trial, defendant's motion for a directed verdict upon the ground "that the evidence shows contributory negligence in the occurrence of this accident" was denied. Expressing the view that the sole proximate cause of the collision was the driving of the defendant on the wrong side of the highway, the court granted the plaintiff's motion for withdrawal from the jury of the defense of contributory negligence and for a directed verdict. The court said:

"The defendant admits that he was violating the State [statute] and City ordinance at the time and was driving across the street from his right to the wrong side of the road between intersections, in violation of the City ordinance and the State law; and, of course, had he not been doing so, this collision would not have happened.

"Counsel for the defendant in his opening statement to the jury conceded that the only ground of contributory negligence, if any, was the fact, if it be a fact, that the plaintiff did not have his headlight burning or did not have a headlight sufficient to comply with the City ordinance and statutes.

"I am of the opinion under the evidence, facts and circumstances of this case that whether or not the motorcycle had a headlight burning is immaterial; and if that be true as a matter of law, then the plaintiff is entitled to an instructed verdict."

The only question submitted to the jury was one of damages. Defendant appeals from judgment entered in favor of plaintiff.

Appellant assigns as error the giving of the instruction to the jury to return a verdict in favor of respondent, to which appellant excepted on the ground that there was sufficient evidence to present a question of fact for the jury whether at the time of the collision a sufficiently lighted head lamp was on the motorcycle. Error is also assigned on rejection of appellant's requested instruction that a violation of the statute which requires head lamps on motorcycles constitutes negligence.

The statute reads as follows:

"All head lamps shall be of such nature, and contain such intensity and distribution of light to reveal persons, vehicles and objects within a reasonable distance ahead under all conditions of loading, all factors considered."

Rem. Rev. Stat., Vol. 7A, § 6360-25 [P.P.C. § 291-23].

Respondent insists that he did not breach any duty he owed to the appellant in the matter of lights; that:

"The purpose of the statute and the duty imposed by it is not that headlamps are to serve as a warning of the presence of the vehicle so equipped, but rather that each driver of a vehicle on the highway shall have such headlamps as will reveal to himself all objects on the highway ahead, irrespective of such objects being 'lighted' or 'unlighted'."

Headlights on motor vehicles are for the purpose of disclosing the road ahead to the operator of the vehicle and also to warn other users of the highway of the presence of such vehicle. If the headlights are not of such nature and do not contain such intensity and distribution of lights, "to reveal persons, vehicles and objects within a reasonable distance ahead under all conditions of loading, all factors considered," (Rem. Rev. Stat., Vol. 7A, § 6360-25), the statute is violated and such violation constitutes negligence *per se.* A person guilty of such negligence is liable for injuries proximately caused thereby.

"It is the duty of a motorist, under the common law, when traveling in the nighttime or in the darkness, to carry some kind of a light which will enable him to avoid running into or injuring another, if the exercise of reasonable care requires the exhibition of a light; and independently of any statute on the subject it is negligence to run an automobile at night without adequate lights to enable the motorist to see objects ahead of him in time to avoid them. . . .

"The purpose of such requirements for front and rear lights on vehicles is to render them visible to travelers on the public highway at night in order that the public may use the highways in safety. . . .

"The lights are not alone required to guide and benefit those approaching the automobile on the highway, but also for the direction and guidance of those in charge of the car." 2 Blashfield, Cyclopedia of Automobile Law & Practice (Perm. ed.) 11, 13, § 851.

"A motorcycle, covering substantially the space of an ordinary four-wheeled car, and operated at night without any light, is a constant menace to those using the highway, and, under a statute requiring motorcycles, having a passenger or other truck attached, to have two lamps in front and one on the rear, the operator of such machine cannot recover for such collision without showing that he had two lamps in front." 2 Blashfield, Cyclopedia of Automobile Law & Practice (Perm. ed.) 17, § 855.

"The statutes in the various jurisdictions generally prescribe the character and sufficiency of the lights required to be carried on motor vehicles using the public highways. The specifications as to the sufficiency of the lights have a degree of difference, though the safety of the highway is the aim of all of them. The most common specifications are that they must be of such design and so adjusted and operated as to render the use of the highway by such vehicle safe for all the public.

"They must be visible for a reasonable distance, or for at least a specified distance in the direction toward which the motor vehicle is proceeding, and, to be adequate for such purpose, they must enable the motorist to see ahead for a reasonable distance; and it can be said as a matter of law that the distance is not reasonable within such a rule unless the road is illuminated for at least as far as the distance required for stopping the vehicle.

"Such statutes are usually construed as not requiring headlights for the sole purpose of warning persons not in the car, or persons approaching the automobile on the highway, but as requiring them also for the purpose of lighting the way for some distance for the driver of the car, and for the direction and guidance of those in charge of the automobile." 2 Blashfield, Cyclopedia of Automobile Law & Practice (Perm. ed.) 18, 20, § 858.

The duty imposed by the statute on the operator of a motor vehicle to drive with adequate lights at night is not merely for the benefit of such operator to enable him to see and avoid injury to others, but for benefit of others to enable them to avoid injury from approaching motor vehicles. *Ramirez v. Salinas,* 90 S. W. (2d) (Tex. Civ. App.) 891. *Carroll v. Krause,* 295 Ill. App. 552, 15 N. E. (2d) 323.

A motion for a directed verdict admits the truth of the opposing party's evidence and of inferences that reasonably can be drawn therefrom, and requires that the evidence be interpreted most strongly against the moving party and in the light most favorable to the opposing party. *Billingsley v. Rovig-Temple Co.,* 16 Wn. (2d) 202, 133 P. (2d) 265.

"No element of discretion is involved, and such a motion can be granted only when it can be held as matter of law that there is no evidence or reasonable inference from evidence to sustain a verdict in the plaintiff's [nonmoving party] favor." *Knight v. Trogdon Truck Co.,* 191 Wash. 646, 71 P. (2d) 1003.

In other words, the trial court erred in granting a motion for a directed verdict unless the evidence favorable to appellant, interpreted most strongly against respondent, and all inferences that can be reasonably drawn from that evidence, do not establish contributory negligence of respondent.

Did respondent have requisite lighted head lamps on his motorcycle at the time of the collision? If not, was that contributory negligence a proximate cause of the collision?

That there was sufficient evidence of contributory negligence on the part of respondent as to the question of

lights on the motorcycle to require the submission of that issue to the jury, is clear from the following summary of the evidence:

The course of Rainier avenue, the grade of which is substantially flat, is northwesterly and southeasterly. This is a four-lane highway, fifty-two feet wide, made up of a strip seventeen feet wide on each side of a concrete strip eighteen feet wide in the center. The course of Thirty-ninth avenue south is north and south and it intersects Rainier avenue at an angle of about forty-five degrees. On May 15, 1945, about nine p. m.—a very dark and stormy night—an automobile operated by appellant, who was proceeding shortly prior to the collision north on Rainier avenue, collided with a motorcycle operated by respondent, who was southbound on Rainier avenue. A gas station, appellant's destination, was located on the southwest corner of Thirty-ninth avenue south and Rainier avenue, the driveway leading into that station being about eighty-five feet south of the corner.

Appellant did not proceed to the corner but, in violation of a statute and a city ordinance, made a left-hand turn, angling across the street to drive into the station. Respondent was traveling in the center of the lane next to the curb on the west side of Rainier avenue for about two short blocks and one long block prior to the collision of the two vehicles on the west side of Rainier avenue. Appellant's speed was about ten miles an hour as he angled across the highway to the point of collision. Respondent, as he approached the scene of the accident, was traveling fifteen to twenty miles an hour.

There is no question as to the sufficiency of the lights on appellant's automobile. Appellant testified that, as he started to make the left-hand turn, he looked ahead for approaching traffic and saw the two headlights of witness Snooks' approaching automobile more than a block distant. There was no sign of any traffic between appellant and the approaching automobile.

After he crossed the center line of the avenue and the front wheels of his automobile were on the brick pavement

on the west side of the avenue with the rear wheels of his automobile on the concrete portion of the avenue, appellant saw the silhouette of an approaching object about twenty to thirty feet to the north, but he was not aware it was a motorcycle, although he thought he could see the outline of a man's legs silhouetted against the lights of the approaching automobile of one Snook. Appellant applied his brakes and stopped within a distance of six or seven feet. While he saw the object and watched it as it approached and collided with the front of his automobile, it did not have any lights. "I saw absolutely no light on the motorcycle at all."

Appellant's testimony is to the effect that he looked where the motorcycle must have been, he saw the entire length of the street where the motorcycle must have been, and, while he saw the lights of an automobile behind the motorcycle a sufficient distance away to permit him to safely make the turn, he did not see the motorcycle until it was approaching him twenty to thirty feet away, and he saw no light on the motorcycle, although he saw the outline of the motorcycle and the outline of its rider.

Witness Calhoun, following behind appellant two or three car lengths and astride the center line of the avenue, had an unobstructed view of approaching traffic. He saw the headlights of Snook's automobile at a sufficient distance to permit him to safely cross in front of that vehicle. He saw nothing to indicate the presence of a motorcycle or any other object between himself and Mr. Snook's automobile. Calhoun admitted he did not see the motorcycle until after the crash. Just before the crash, his vision was masked by appellant's automobile.

One Snook, the headlights of whose automobile the appellant and Calhoun saw, was behind respondent's motorcycle. He testified that he saw the motorcycle as it passed his automobile, and that the motorcycle had a yellowish headlight, not a bright white light.

Witness Dawson, who was at his place of business on Rainier avenue near and at the time of the collision, testified that the motorcycle and automobile had headlights.

Respondent saw appellant's automobile as it proceeded northbound on its own side of the street when it was one hundred fifty feet to three hundred feet distant, but he did not see appellant's automobile, he testified, when it angled across the center line of the street. There was testimony that respondent, who had to start his motorcycle by pushing it because the battery was so low, admitted his lights were weak.

Respondent is a mail carrier. He testified that his motorcycle, a 1932 model purchased by him in 1934 or 1935, had been operated a distance of ninety thousand miles; that the rear tire was smooth; that the battery was "fair to low" and that he had to start it by shoving it in gear on a downgrade. He saw appellant's automobile as it crossed to respondent's side of the avenue, but he continued straight ahead without diminishing his speed.

"I didn't know why he should be turning over my way, but I had the right-of-way, and why shouldn't I proceed? So I kept on until it become obvious that he didn't have any intentions of letting me go by. And at that time I used all of the dodging, or tried to keep from getting hit, that I knew of, which was put on my brakes. And at the last minute, instant, I decided that I had a chance, a very slender chance, of passing on his right or my—to my left, and passing him on the wrong side; and I took that chance."

Appellant and a police officer of the city of Seattle tested the head lamp on the motorcycle after the accident. The lens was unbroken, "the light was not operating."

Counsel for respondent argue that the evidence that there was a complete absence of a headlight on the motorcycle or that the light was too dim to be seen by respondent, is not substantial, for the reason that the testimony of appellant and witness Calhoun was negative in character. This ignores respondent's admission that his lights were dim and his battery low. Nor is there taken into consideration the testimony of witness Snook that the light was yellow and the evidence that the headlight could not be operated after the accident, although the lens had not been broken by the accident.

■ The testimony of appellant and the testimony of witness Calhoun amount to more than the testimony rejected as negative in the cases cited by respondent, in which cases the witness testified that "he did not see." The testimony of appellant and witness Calhoun are within the rules announced as follows:

"In applying the foregoing principle requiring that the witness' inferences be based on adequate data (*ante,* § 659), Courts have often been asked to exclude testimony based on what may be called *negative knowledge, i.e.* testimony that a fact did not occur, founded on the witness' failure to hear or see a fact which he would supposedly have heard or seen if it had occurred.

"Yet there is no inherent weakness in this kind of knowledge. It rests on the same data of the senses. It may even sometimes be stronger than affirmative impressions. The only requirement is that the witness should have been so situated that *in the ordinary course of events he would have heard* or seen the fact had it occurred. This sort of testimony is constantly received,—particularly in proof of the failure to give railroad signals, the loss of a chattel, the absence of a witness, the non-existence of a fictitious person, the non-payment of money, and other negative facts." 2 Wigmore on Evidence (3d ed.) 777, § 654.

In *Lovett v. Gill,* 142 Ore. 534, 20 P. (2d) 1070, the rule is stated as follows:

"The value of negative testimony, like that of all other testimony, is dependent upon the opportunities which the witness possessed for making observations. The testimony of a witness who gave negative testimony because he did not observe or was inattentive would amount to nothing. But if he was in a position where he could observe, and made diligent exercise of his faculties, his testimony that the alleged event did not occur is not negative but is, in fact, positive. Its value is dependent upon his credibility and a comparison of his opportunities for making observations with that of the other witnesses. Wigmore on Evidence (2d Ed.) § 664. In each of the following cases so-called negative testimony established the absence of lights: *Cox v. Schuylkill Valley Traction Co.,* 214 Pa. 223 (63 Atl. 599); *Pioneer S. S. Co. v. Jenkins,* 111 C.C.A. 44 (189 Fed. 312). The plaintiff testified that as she drove along the highway

she was constantly looking ahead until she intermittently diverted her attention to the left as she began to turn. Mr. Hammond and another witness who arrived at the scene of the collision shortly after the impact swore that there were no lights upon the truck which was then standing still. Virgil Gill testified that he had not changed the lights after the collision. The two occupants of a car which was following the plaintiff at a distance of approximately 50 feet had not observed the approach of the truck until the collision had occurred. We know of no reason why this testimony should be disregarded, and conclude that the findings of the circuit court that she had maintained a reasonable lookout ahead, and that the truck was not illuminated, are supported by substantial evidence."

The testimony of appellant and witness Calhoun was not simply negative testimony. They were in a position where they could observe and under the evidence they diligently exercised their faculties. Their testimony that the light on respondent's motorcycle was not operating or was so dim that it could not be seen, is affirmative and does not come within the principle of the cases on which respondent relies.

It is unnecessary to review all of the authorities cited, all of which are in harmony with what we have said or distinguishable from the case at bar. Whether the concession of counsel for appellant in his opening statement to the jury that the only ground for contributory negligence, if any, was whether respondent had a sufficient headlight, restricted consideration of the question of contributory negligence solely to that of the lights, we refrain from discussing, as there was substantial evidence on the question whether the lights were sufficient and, if not, whether that was a proximate cause of the accident which required submission of those issues to the jury.

The judgment is reversed, and the cause remanded with direction to grant a new trial.

MALLERY, C. J., SIMPSON, HILL, and ABEL, JJ., concur.