STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. LAMONT THOMAS, DEFENDANT-APPELLANT.

Reargued June 6, 1972—Decided July 24, 1972.

Mr. *Edward Weisslitz,* Assistant Deputy Public Defender, argued the cause for appellant (Mr. *Stanley C. Van Ness,* Public Defender, attorney; Mr. *Weisslitz,* of counsel, and on the brief).

Mr. *Solomon Forman,* Assistant Prosecutor, argued the cause for respondent (Mr. *Robert N. McAllister, Jr.,* Atlantic County Prosecutor, attorney; Mr. *Ernest M. Curtis,* Assistant Prosecutor, of counsel, and on the brief).

The opinion of the Court was delivered by

MOUNTAIN, J. Defendant was indicted for murder under *N. J. S. A.* 2A:113–1 and 2A:113–2. Claiming double jeopardy, he moved to dismiss the indictment pursuant to *R.* 3:10–2. The trial court, in a written opinion reported at 114 *N. J. Super.* 360 (Law Div. 1971) denied the motion but at the same time refused to permit the State to proceed upon the theory of a felony-murder, directing that "the proofs shall be limited and directed towards the direct establishment of all the elements of a first degree Murder." Defendant moved for leave to appeal to the Appellate Division from the denial of his motion to dismiss and the State moved for leave to appeal from so much of the order as

precluded it from proceeding upon the theory of felony-murder. Leave to appeal was granted to both parties; we then certified both appeals before argument in the Appellate Division. *R.* 2:12–1.

On June 5, 1969, defendant approached Mrs. Fannie Murray, a 74-year-old woman, knocked her to the sidewalk and made off with her pocketbook. Following his apprehension he was indicted on July 29, 1969 for atrocious assault and battery, *N. J. S. A.* 2A:90–1, assault with intent to rob, *N. J. S. A.* 2A:90–2, and robbery, *N. J. S. A.* 2A:141–1. On August 5 he pleaded not guilty to all three counts of the indictment but on October 27 he retracted his plea as to the atrocious assault and battery count and pleaded guilty to that offense. This action was taken pursuant to a plea bargain entered into between the defendant and the prosecutor. When the guilty plea was entered both the court and the prosecutor indicated that in due course the remaining two counts of the indictment would be dismissed. On December 5, 1969, defendant was sentenced to an indeterminate term in the Youth Reception and Correctional Center at Yardville. At the time of sentencing the probation officer advised the court that the prosecutor had recommended dismissal of the remaining counts of the indictment.

On January 23, 1970, Mrs. Murray, the victim of the assault, died from injuries allegedly sustained as a result of the attack. About nine months later, on September 15, 1970, on motion of the prosecutor, the two remaining counts of the indictment, those charging assault with intent to rob and robbery, were dismissed. On October 29, 1970 defendant was indicted for the murder of Fannie Murray.

Following oral argument this Court remanded the matter to the Law Division to determine (1) whether at the time of the plea bargain the parties were aware of the possibility that Fannie Murray might die, and if so whether the plea bargain was intended to be a final disposition of the entire matter regardless of whether or not the victim survived, and

(2) what was intended by the prosecutor and the court in dismissing the remaining two counts of the indictment on September 15, 1970.

From the record made on remand we are satisfied that the defendant, at the time of the plea bargain, had been made well aware by his then counsel that Mrs. Murray was likely to die. He was, in fact, advised by counsel that if he had committed the crime it would be to his advantage to plead guilty to a count in the indictment—assuming the prosecutor would agree—as this would probably preclude a later prosecution for murder. Defendant accepted this advice and his attorney accordingly conferred with an assistant prosecutor, with whom it was arranged that a guilty plea would be entered to the count charging atrocious assault and battery, with the understanding that the other two counts would then be dismissed. Nothing was said as to the possibility that Mrs. Murray might die. At the time the victim was being cared for in a nearby nursing home, and her state of health could have been readily ascertained by the prosecutor. This, however, was not done, and it is clear that at the time of the bargain and when defendant's guilty plea was accepted, neither the prosecutor nor the court was conscious of the fact that Mrs. Murray's condition was probably fatal.

It was also made clear from the record on remand that in September, 1970, when the court, upon the prosecutor's motion, dismissed the counts of the indictment charging robbery and assault with intent to rob, at least the prosecutor was fully aware that the victim had died the previous January; it is not certain whether the judge who granted the motion to dismiss did or did not know that this had occurred. The dismissal of these charges concededly represented an act on the part of the prosecutor to which he felt obliged by virtue of his agreement with defendant.

 We first consider defendant's contention that having accepted his plea of guilty to the charge of atrocious assault and battery the State, under principles of double jeopardy, thereby rendered itself unable to indict and try defendant at

some later time for the crime of murder. In his opinion below, Judge Rauffenbart carefully reviewed many of the pertinent authorities in this State that deal with the problem of double jeopardy. He noted that our courts have employed three different and distinct tests to determine whether a defendant is being twice placed in jeopardy. These may, for convenience, be referred to as the "same transaction" test, the "lesser included offense" test and the "same evidence" test. After discussing each of these, the opinion goes on to point out that apparently no decision in this jurisdiction has squarely decided the question as to what test should be applied where the victim dies after a judicial determination as to the initial criminal act. 114 *N. J. Super.* at 365. It is noted, however, that

> . . . the collected cases indicate that where the victim dies subsequent to a disposition of an earlier indictment charging the crime which is the efficient cause of the victim's death, a new crime legally and factually distinct has been committed. And although the murder resulted from the same act which constituted the basis of the previous indictment, double jeopardy would not attach. (Citing authorities). [*State v. Thomas*, 114 *N. J. Super.* at 366]

We entirely agree with this conclusion. In addition to the cases cited by the court below, see also *People v. Harrison,* 395 *Ill.* 463, 70 *N. E.* 2d 596 (1946), *cert.* denied 334 *U. S.* 812, 68 *S. Ct.* 1013, 92 *L. Ed.* 1744 (1948) ; *State v. Randolph,* 61 *Idaho* 456, 102 *P.* 2d 913 (1940) ; *State v. Meadows,* 272 *N. C.* 327, 158 *S. E.* 2d 638 (1968) ; *State v. Wilson,* 85 *Ariz.* 213, 335 *P.* 2d 613 (1959). In each of these cases the defendant was either convicted of assault and battery or pleaded guilty thereto and was thereafter indicted for murder, the victim having died following the initial conviction. In each case the defense of double jeopardy was raised and rejected. As the Supreme Court of Idaho put it,

> Certainly the state need not on the one hand wait after every battery for a year and a day to determine whether the assaulted party dies and then proceed, or lose the right to prosecute for the greater offense. Nor on the other hand would it be just to hold an

assaulting defendant for a year and a day as a potential murderer on the possibility of death ensuing within that time. [*State v. Randolph*, 102 *P.* 2d at 914]

If defendant's case, therefore, rested solely upon the fact that he had pled guilty and been sentenced on the charge of atrocious assault and battery before the victim's death, it would deserve little countenance. The law is settled that where the chronology of events is (1) assault and battery, (2) conviction of that offense, (3) death of the victim, and (4) indictment for homicide, the defense of double jeopardy is not available.

Here, however, an additional factor invites careful consideration in the defendant's interest. In our view it has been clearly established that defendant entered into what we find to have been a perfectly valid plea bargain, to the full benefits of which he remains entitled.

In late October, 1969, defendant's trial was imminent. At that time, by investigation, his counsel had learned from doctors in the nursing home where Mrs. Murray was a patient, that there was little chance of her recovery and a good likelihood that she would soon die. He accordingly advised his client, as we have already indicated, that a guilty plea to a crime for which he was then under indictment would probably preclude a later possible charge of murder. The bargain was entered into, the prosecutor being apparently unaware of the victim's critical condition. The State now complains that this was unfair and that defendant's counsel should have advised the prosecutor and the court of Mrs. Murray's state of health before asking the court to accept the plea of guilty. We disagree. There may well be instances in which the conduct of a defendant in negotiating a plea bargain is later revealed to have been so unscrupulous or underhanded as to justify a court in depriving him of the benefits of the bargain. We by no means foreclose this possibility. The interests of society as well as those of a defendant must be considered. But such is not

the case here. The prosecutor could have, and we think should have, learned of Mrs. Murray's condition. A telephone call would have been sufficient. We also emphasize that the function of defense counsel is to represent his client to the best of his ability. While the zeal displayed in the course of this representation must not transcend bounds imposed by law or by those ethical standards and professional proprieties which govern the conduct of all members of the bar at all times, yet it forms no part of the duties of defense counsel to alert the State to imminent pitfalls or warn of possible missteps. We find nothing improper in the circumstances attending the consummation of the plea bargain.

■ We now accept plea bargaining as a legitimate and respectable adjunct of the administration of the criminal laws. It has become institutionalized in our system of criminal justice. As this Court observed a few years ago,

It should be pointed out here that there is nothing unholy in honest plea bargaining between the prosecutor and defendant and his attorney in criminal cases. At times, it is decidedly in the public interest, for otherwise, on occasion the guilty would probably go free. This does not mean that the prosecutor can commit the sentencing judge to any particular sentence or action, such as downgrading charges against the defendant or suspending sentence or granting probation. The prosecutor's function in this connection is strictly limited to an agreement to recommend a form of leniency, to which recommendation the court in its discretion after being made aware of the full situation would give due consideration. [*State v. Taylor*, 49 *N. J.* 440, 455 (1967)]

■ If plea bargaining is to fulfill its intended purpose, it must be conducted fairly on both sides and the results must not disappoint the reasonable expectations of either. With this in mind in 1971, this Court published a memorandum setting forth the proper procedures to be followed. 94 *N. J. L. J.* Index Page 1 (1971). Prosecutor and defense counsel may enter into discussions concerning pleas and sentences; in these discussions the judge must take no part. The agreement is to be placed on record in open court. If

the proposed guilty plea is accepted, the acceptance is tentative and conditional. For if the prosecutor has agreed, as consideration for the guilty plea, that one or more other pending charges against defendant shall be dismissed, and the judge before whom the motion to dismiss is brought feels that to grant the motion will not serve the ends of justice, then the defendant may withdraw his plea of guilty. Similarly, if the sentencing judge feels that justice will not be done were he to impose the sentence to which the parties have agreed and which the prosecutor recommends, the defendant may then also withdraw his plea.

It is apparent that these procedures have as one of their purposes to assure a defendant that in entering into a plea bargain he will not thereby become entrapped. It is equally as important to assure a defendant that after the agreement has received final judicial sanction, it will be carried out according to its terms. Only if it is generally believed that performance on the part of the State will not disappoint a defendant's reasonable expectations will plea bargaining become and remain a truly effective device in criminal administration. Aside from this pragmatic necessity, essential fairness dictates the same result.

The Supreme Court recently had occasion to consider this question. In *Santobello v. New York,* 404 *U. S.* 257, 92 *S. Ct.* 495, 30 *L. Ed.* 2d 427 (1971) defendant was indicted on two felony counts, each having to do with gambling. It was agreed that if the defendant pleaded to a lesser included offense, the prosecutor would make no recommendation as to sentence. The record discloses a concession on the part of the State that this agreement was in fact made. The assistant prosecutor who appeared at the time of sentencing was not the same person with whom the plea bargain had been made. Inadvertently and apparently in ignorance of the arrangement, he did in fact recommend the maximum sentence of one year, which was imposed. The Supreme Court vacated the judgment. In the course of his opinion Chief Justice Burger observed,

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

This record represents another example of an unfortunate lapse in orderly prosecutorial procedures, in part, no doubt, because of the enormous increase in the workload of the often understaffed prosecutor's offices. The heavy workload may well explain these episodes, but it does not excuse them. The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called "plea bargaining," is an essential component of the administration of justice. Properly administered, it is to be encouraged. If every criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities. [*Santobello v. New York*, *supra*, 92 *S. Ct.* at 498]

Speaking directly to the point we are considering, the opinion continues,

. . . when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. [*Id.* at 499]

From an examination of the record made upon remand we are convinced that the defendant anticipated that by pleading guilty to atrocious assault and battery, and then serving whatever sentence might be imposed, he was terminating the incident and could not thereafter be called upon to account further. We think, under all of the circumstances, that this expectation was entirely reasonable and justified. Furthermore we think it was shared by the prosecutor, at least until he learned that Mrs. Murray had died. In moving thereafter to dismiss the remaining counts of the indictment the prosecutor was being faithful to the agreement; on the other hand, in pressing the presently pending murder charge, the State is doing violence to its agreement, and is seeking to deprive the defendant of something for which he legitimately bargained.

▮ After serving 18 months of an indeterminate term, defendant was released from custody on parole. Where there has been a failure on the part of the prosecution to abide by the terms of a plea bargain, the remedial step will normally be either to vacate the guilty plea and permit the

defendant to plead anew, or to direct that such steps be taken as may be necessary to carry out the terms of the agreement. To vacate the plea in this case would be unjust to the defendant who has already been punished for the crime to which he confessed. As to him the status quo cannot be resumed. On the other hand, he has performed his part of the bargain. The terms of the agreement will have been fully carried out on both sides if the murder charge is now dropped.

Accordingly the order of the trial court is modified to the end that the indictment shall stand dismissed.

*For modification*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN.—7.

*Opposed*—None.